# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MELANIE M. THOMPSON,

        Plaintiff,

       v.                                Case No. 25-CV-1964

ASCENSION MEDICAL GROUP SOUTHEAST WISCONSIN, INC.
*a/k/a Ascension Wisconsin*,
COLUMBIA ST. MARY'S HOSPITAL OF MILWAUKEE INC., and
STEPHANIE A. MOMPER,

        Defendants.

## DECISION AND ORDER

### 1. Background

Melanie Thompson filed this action asserting thirteen claims stemming from alleged violations of an employment contract, wrongful termination, and enforcement of unreasonably restrictive covenants. (ECF No. 1.) She alleges the claims variously against Ascension Medical Group Southeast Wisconsin, Inc. ("Ascension"), Columbia St. Mary's Hospital of Milwaukee, Inc. ("Columbia St. Mary's"), and/or Stephanie Momper. (*See id.*)

Now pending before the court is the defendants' motion to dismiss Thompson's complaint for failure to state a claim upon which relief may be granted pursuant to

Federal Rule of Civil Procedure 12(b)(6). (ECF No. 13.) All parties have consented to the full jurisdiction of this court pursuant to 28 U.S.C. § 636(c). (ECF Nos. 4, 10.) The motion is fully briefed and ready for resolution.

**2. Facts**

At the motion to dismiss stage the court accepts all well-pled facts as true and so summarizes the following facts from the plaintiff's complaint.

Thompson executed a "Physician Employment Agreement Urgent Care Health Center" (the "Employment Agreement") on August 6, 2010. (ECF No. 1, ¶ 20.) Under the Employment Agreement, Thompson agreed to work as a "family medicine physician employee" at Columbia St. Mary's clinics and hospitals on a part-time basis. (*Id.*, ¶¶ 15, 19.) Section 1.3 of the Employment Agreement defines "part-time" to mean "twenty (20) scheduled hours per week." (*Id.*, ¶ 19 (quoting ECF No. 1-2 at 7).) Section 1.3 also states, "Clinic will endeavor to maintain with Physician a consistent schedule consisting of bi-weekly alternating days, subject to Clinic's operational needs." (*Id.* (quoting ECF No. 1-2 at 7).)

Thompson alleges that Sue Sanicola, the vice president of physician services at Columbia St. Mary's, made certain representations about the Employment Agreement that Thompson relied upon in deciding to sign the contract. (ECF No. 1, ¶¶ 17, 20.) Specifically, Sanicola allegedly told Thompson,

> [D]o not worry about this language because Columbia St. Marys will always be scheduling you 20 hours per week at CSM clinics or hospitals

2

despite the "endeavor" and "subject to Clinic's operational needs" language because there would always be a need for Dr. Thompson's services within the Columbia St. Marys healthcare system.

(*Id.*, ¶ 20.)

The Employment Agreement took effect on October 1, 2010, with a provision to automatically renew for successive two-year terms unless terminated by written notice given at least 360 days prior to the end of the then-current renewal period. (ECF No. 1, ¶ 23 (citing ECF No. 1-2 at 7).)

In or about 2016 defendant Momper was appointed by Columbia St. Mary's as medical director of the clinics where Thompson worked. (ECF No. 1, ¶ 30.) In or about May 2020 Momper hired nurse practitioner Jessica Sullivan and directed the clinic scheduling supervisors to schedule Sullivan for hours that Thompson would have been scheduled for or would have taken. (*Id.*, ¶ 42.)

In November 2021 Columbia St. Mary's advised Thompson that her employment contract would be assigned to Ascension effective December 26, 2021. (ECF No. 1, ¶ 54.) The letter confirmed that the assignment would not change any of the terms and conditions of the Employment Agreement. (*Id.*) Sanicola continued in the same or equivalent role with Ascension as she had had with Columbia St. Mary's. (*Id.*, ¶ 24.) Momper apparently also continued in the same or equivalent role. (*See generally id.*) In

July 2023 Momper "implemented an age discrimination plan" by hiring a "young" nurse practitioner named Kaitlin Grigoryev to replace Thompson. (*Id.*, ¶ 69.)

The parties (including Columbia St. Mary's and, in turn, Ascension) allowed the Employment Agreement to automatically renew every two years until, on April 22, 2024, Ascension provided Thompson with written notice that it was her last day of work because her services were no longer needed, although her last "date of employment" would be September 30, 2026. (ECF No. 1, ¶ 79; *see also* ECF No. 1-2 at 23–24 (copy of termination letter).)

On May 23, 2024, Thompson's attorney sent a demand letter to Ascension asserting various claims for back pay, front pay, and terminated benefits. (ECF No. 1, ¶ 83 (citing ECF No. 1-2 (copy of demand letter)).) The letter also alleged breach of contract and age discrimination and requested that an authorized Ascension representative contact Thompson's attorney within ten days. (*Id.*) Ascension never responded to the letter. (*Id.*, ¶ 84.)

According to Thompson, the following statistics represent the average weekly hours she worked per year for Columbia St. Mary's and Ascension, respectively: 21.6 in 2010, 21.6 in 2011, 22.3 in 2012, 16.6 in 2013, 15.1 in 2014, 20.0 in 2015, 23.3 in 2016, 23.7 in 2017, 20.2 in 2018, 16.7 in 2019, 14.4 in 2020, 8.9 in 2021, 4.9 in 2022, 7.0 in 2023, 0 in 2024, and 0 in 2025. (ECF No. 1, ¶ 98.)

Additional facts will be discussed herein as relevant.

### 3. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiff[]." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

### 4. Analysis

The court will address each of Thompson's thirteen claims in turn.

#### 4.1. Age Discrimination in Employment

Thompson alleges that Ascension violated the Age Discrimination in Employment Act ("ADEA") by constructively terminating her employment on the basis of her age and treating a younger employee more favorably. (ECF No. 1, ¶¶ 101–09.)

The ADEA makes it illegal for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such

individual's age." 29 U.S.C. § 623(a)(1). "To establish a violation of the ADEA, an employee must show that age actually motivated the adverse employment action." *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010).

Ascension argues that Thompson failed to plead a plausible claim that her age was a "but for" cause of her termination because she relies on speculation and legal conclusions. (ECF No. 14 at 5–6.) Ascension claims that Thompson has pled herself out of court because replacing an older worker with a younger worker for financial reasons is not age discrimination. (ECF No. 18 at 3 (citing *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1126 (7th Cir. 1994) (holding "Anderson could not prove age discrimination even if he was fired simply because Baxter desired to reduce its salary costs by discharging him")).)

*Anderson v. Baxter Healthcare Corporation* states that age and compensation are not necessarily correlated and, therefore, a successful age discrimination claim requires more than simply evidence of financial motivation. *See Anderson*, 13 F.3d at 1126. Having said that, *Anderson* made those comments in the context of a motion for summary judgment and did not suggest that a financial benefit to terminating an older worker could never support an age discrimination claim. *See id.* (affirming grant of summary judgment because plaintiff failed to show his employer's proffered reasons for discharging him, performance inadequacies, were pretextual).

"[The Supreme Court] has never indicated that the requirements of establishing a prima facie [discrimination] case … also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002); *see also Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (criticizing district court for relying on "summary judgment decisions that addressed not the contents of complaints but the evidence needed to take a claim to a jury").

Thompson alleges that she was over forty years old and performing her duties competently when she was terminated due to her age and replaced by a worker under forty years old. *See Clark v. SMG Corp.*, No. 16-cv-07985, 2018 WL 4699763, at *5, 2018 U.S. Dist. LEXIS 168576, at *14 (N.D. Ill. Sept. 30, 2018) (observing that a claim of discrimination under the ADEA requires that "a plaintiff must allege that she is over 40 years old and the employer took a specified adverse employment action against her because of her age"). Thompson has pled sufficient facts to support her claim that Ascension terminated her because of her age. *See Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (observing that the complaint must contain some facts, beyond generalized allegations, that make the discrimination contention plausible).

Therefore, the court will deny the defendants' motion to dismiss with respect to Thompson's ADEA claim.

### 4.2. Willful Violation of the ADEA

Thompson alleges that Ascension willfully violated the ADEA and that she is entitled to liquidated damages. (ECF No. 1, ¶¶ 110–11.) Ascension argues that this "claim" must be dismissed because it merely alleges the type of relief available rather than stating a standalone cause of action. (ECF No. 14 at 6–7.)

Under 29 U.S.C. § 626(b), "liquidated damages shall be payable only in cases of willful violations of [the ADEA]." A request for liquidated damages may be appropriately stated in a complaint as a "demand for relief" rather than a "claim." *See Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 874 (N.D. Ill. 2022) ("Federal Rule of Civil Procedure 8 recognizes this distinction by requiring 'a short and plain statement of the *claim* showing that the pleader is entitled to relief' at subsection (a)(2) and, separately, 'a demand for the *relief* sought' at subsection (a)(3).") (emphases in original). "Rule 8(a)(3) requires plaintiffs to include a 'demand for the relief sought' but does not require damages to be alleged plausibly or with particularity." *Ibarra v. Prospera, LLC*, No. 20-C-7015, 2021 WL 1921015, at *4, 2021 U.S. Dist. LEXIS 92738, at *9 (N.D. Ill. May 12, 2021).

Because Thompson's "claim" for liquidated damages is not a cause of action independent of her ADEA claim, the court will grant the defendants' motion to dismiss this claim. Ascension does not argue that liquidated damages would not be available to Thompson should she prevail on her ADEA claim. (*See generally* ECF No. 14.) Therefore,

dismissal notwithstanding, the court will construe Thompson's allegations in this section

(ECF No. 1, ¶¶ 110–11) as a demand for relief should she prevail on her ADEA claim.

### 4.3. ERISA

Thompson alleges that Ascension violated section 510 of the Employment

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et. seq. (ECF No. 1, ¶¶ 112–

16.) Ascension argues this claim must be dismissed because Thompson failed to allege

facts showing "specific intent to interfere with the participant's attainment of benefits."

(ECF No. 14 at 7–8.)

"[S]ection 510 of ERISA protects employees against dismissal by employers who

seek to limit costs of health benefit plans by preventing the use of such benefits."

*Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 295 (7th Cir. 1998). "To prove a violation of

section 510, plaintiffs must establish more than a loss of benefits; they must demonstrate

that their employers terminated them with the specific intent of preventing or retaliating

for the use of benefits." *Id.* (citations omitted).

Thompson points to her allegation that the defendants

in bad faith, constructively terminated [her] employment contract
prematurely in April 2024 (as it remains valid through September 30, 2026)
by among others: refusing to schedule her for work a minimum of 20 hours
per week, by terminating her malpractice insurance coverage, by
terminating her State patient compensation fund contributions, by
terminating her retirement benefits, by terminating her continuing medical
education benefits and further, by attempting to claw back paid
compensation before her employment contract termination date.

9

(ECF No. 17 at 6–7 (quoting ECF No. 1, ¶ 95).) Thompson contends that "[t]he reasonable inference of this allegation is that Ascension intentionally refused to provide [her] with any hours from April 22, 2024 through the end of her contract, among others, for the purpose of preventing her from receiving future retirement benefits." (*Id.* at 7.)

Thompson cites out-of-circuit precedent for the proposition that "[t]he time of the adverse employment action and cost savings by the employer which resulted 'are circumstances sufficient to give rise to an inference of discrimination.'" (ECF No. 17 at 7 (quoting *Ehrlich v. Howe*, No. 92-Civ.-1079, 1992 WL 373266, at \*4, 1992 U.S. Dist. LEXIS 18269, at \*12, (S.D.N.Y. Dec. 1, 1992) (itself quoting *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114-15 (2nd Cir. 1988)).) The plaintiff in *Ehrlich* "alleged that [the] defendants terminated him in order to prevent his rights from vesting," *as well as* that the termination occurred nine months before vesting and the defendants were aware of the significance of this timing. *Ehrlich*, 1992 WL 373266, at \*4; *see also Dister*, 859 F.2d at 1115–17 (finding that the plaintiff stated a prima facie claim under § 510 because he was discharged four months and seven days before his rights were to vest, at significant cost savings to the defendant, although he ultimately failed to rebut the employer's nondiscriminatory reason for discharge).

Thompson made no allegation in her complaint that the defendants intended to interfere with her benefits. (*See* ECF No. 1, ¶¶ 112–16.) She claimed that her wrongful termination led to the "resultant denial of her ERISA benefits." (*Id.*, ¶ 113.) But any

consequential loss of benefits does not give rise to a claim under § 510 every time an employee is terminated. *See Teamsters Loc. Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 827 (7th Cir. 2014) ("Actions that only incidentally affect the participant's benefits under a plan do not violate § 510.").

Because Thompson did not allege that the defendants acted with the intent to interfere with her benefits, she does not state a claim under § 510 and the court will grant the defendants' motion to dismiss with respect to Thompson's ERISA claim. *See Teamsters*, 741 F.3d at 827 (affirming dismissal of § 510 claim because amended complaint did not allege the employer's "discharge decision was motivated by a specific intent to frustrate the employees' attainment of pension benefits," nor were there "sufficient factual allegations to support a reasonable inference the [employer] acted with that intent").

### 4.4. Wisconsin Fair Employment Act

Thompson concedes that her claim against Ascension under the Wisconsin Fair Employment Act should be dismissed. (ECF No. 17 at 7.) Therefore, the court will grant the defendants' motion to dismiss this claim.

### 4.5. Breach of Contract

"A complaint states a claim for breach of contract when it alleges: (1) a contract between the plaintiff and the defendant that creates obligations flowing from the defendant to the plaintiff; (2) failure of the defendant to do what it undertook to do; and

(3) damages." *Meier v. Wadena Ins. Co.*, 676 F. Supp. 3d 690, 695 (E.D. Wis. 2023) (quoting

*Brew City Redev. Grp., LLC v. The Ferchill Grp.*, 714 N.W.2d 582, 588 (Wis. Ct. App. 2006)).

Thompson alleges that Ascension breached the Employment Agreement in four

ways and that Columbia St. Mary's also breached the contract. (ECF No. 1, ¶¶ 124–133.)

The court will address each alleged breach in turn.

**4.5(a) Scheduling Twenty Hours per Week**

Thompson alleges that Ascension and Columbia St. Mary's breached the

Employment Agreement by not scheduling her for a minimum of twenty hours per week.

(ECF No. 1, ¶¶ 127, 130.) Ascension and Columbia St. Mary's argue that the contract did

not require them to schedule Thompson for any minimum number of hours. (ECF No. 14

at 9–10 (citing ECF No. 1-2 at 7).)

The contract language in question reads:

> The Physician agrees to devote on a part-time basis, Physician's attention
> and energies to the duties of providing professional physician services….
> For purposes of this Agreement, part-time means twenty (20) scheduled
> hours per week. Clinic will endeavor to maintain with Physician a
> consistent schedule consisting of bi-weekly alternating days, subject to
> Clinic's operational needs. Either party may initiate discussions regarding
> schedule preferences and express requests for schedule adjustments at
> reasonable intervals.

(ECF No. 1-2 at 7–8.)

Thompson contends that the contract language is ambiguous and susceptible to

more than one reasonable interpretation. (ECF No. 17 at 9.) She further alleges that then-

vice president of physicians for Columbia St. Mary's, Sue Sanicola, represented to her in

2010 that the terms "endeavor" and "subject to Clinic's operational needs" had no practical effect and did not apply to her because there would always be hours available for Thompson's services. (*Id.* (citing ECF No. 1, ¶ 126).)

The defendants assert that Sanicola's alleged representations are inadmissible because the contract contained an integration clause and "an oral agreement cannot modify a fully integrated written employment agreement." (ECF No. 14 at 10 (citing *Bell v. Edward D. Jones & Co.*, 962 F. Supp. 1188, 1191 (W.D. Wis. 1996) (observing that "evidence of a party's contrary prior oral agreement is not admissible" when a "fully integrated agreement exists")).)

Setting aside the oral representation, the written Employment Agreement is ambiguous as to the scheduling obligation for Ascension and Columbia St. Mary's. Reading the complaint, including the ambiguous contract in Thompson's favor, the court finds that Thompson has adequately alleged the defendants' nonperformance of a contract obligation and stated a claim for breach of contract based on scheduling her for less than twenty hours of work per week.

The defendants further argue that a claim for breach of contract cannot stand because Thompson's own allegations establish the affirmative defenses of waiver and laches. (ECF No. 14 at 10–11.) Although "district courts ordinarily should not dismiss a complaint based on an affirmative defense," "when it is 'clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's

claims are barred as a matter of law,' dismissal is appropriate." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (citations omitted).

"It is an established principle of contract law that 'a party may waive its contractual rights impliedly by taking actions inconsistent with the assertion of those rights.'" *EuroChem Trading USA Corp. v. Ganske*, No. 18-CV-16-SLC, 2019 WL 2929760, at *4, 2019 U.S. Dist. LEXIS 112194, at *11 (W.D. Wis. July 8, 2019) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Schilli Corp.*, 420 F.3d 663, 672 (7th Cir. 2005)). Laches is an equitable doctrine whereby a party loses its right to assert a claim if there is: "(1) unreasonable delay by the party seeking relief, (2) lack of knowledge or acquiescence by the party asserting laches that a claim for relief was forthcoming, and (3) prejudice to the party asserting laches caused by the delay." *Zizzo v. Lakeside Steel & Mfg. Co.*, 752 N.W.2d 889, 893 (Wis. Ct. App. 2008).

The defendants claim that Thompson acted inconsistently with the Employment Agreement because she did not promptly seek to enforce the purported obligation to schedule her for twenty hours per week and allowed her contract to renew five times without written modification. (ECF No. 14 at 11.) According to Thompson's complaint, Columbia St. Mary's and Ascension, respectively, scheduled her for less than twenty hours per week on average in 2013 and 2014, as well as 2019 through 2025. (ECF No. 1, ¶ 98.) The defendants claim that Thompson's "delay and the prejudice to Ascension are evident." (ECF No. 14 at 11.)

Thompson maintains that she did not intentionally act inconsistently with the Employment Agreement because she averaged at least twenty hours per week overall from 2010 through 2018 and could reasonably expect her average weekly hours to balance out again when they dipped below twenty hours in 2019. (ECF No. 17 at 10–11.) She further alleges that the doctrine of equitable estoppel negates the defendants' waiver argument because Thompson detrimentally relied on the representations by defendant Momper and other Ascension employees, who led her to believe from 2020 into 2024 that her hours would increase again with the reopening of Germantown's urgent care clinic. (*Id.* at 11–12 (citing ECF No. 1, ¶¶ 48, 55, 56, 65, 69, 73).)

The application of the affirmative defenses is ultimately not clear from the face of Thompson's complaint. As previously stated, the contract is ambiguous as to Columbia St. Mary's and Ascension's scheduling obligations. The parties seem to take for granted that the average hours should be considered on an annual basis, but it is unclear why that metric is appropriate when the contract is for two years and defines "part-time" on a weekly basis. The complaint does not clearly reveal whether any delay in enforcement was unreasonable or what prejudice, if any, the defendants incurred. That analysis may be influenced by equitable considerations, such as Thompson's allegations regarding reliance on promises to increase her hours.

Because Columbia St. Mary's and Ascension have not clearly established that this claim is barred by an affirmative defense, it can proceed. The court will deny the

defendants' motion to dismiss with respect to the breach of contract claim for failure to schedule Thompson for twenty hours per week.

**4.5(b) Constructive Termination of Employment Agreement**

Thompson alleges that Ascension breached her employment contract in bad faith by notifying her on April 22, 2024, that it was her last day of work despite the employment contract continuing through September 30, 2026. (ECF No. 1, ¶ 129.) The defendants have not moved to dismiss this claim. (*See generally* ECF No. 14.)

**4.5(c) Release from Restrictive Covenant**

Section 1.3 of the Employment Agreement states that, "… during Physician's employment, Physician will not engage in any other business or medical practice activity which relates to the type of care the Physician is providing as an employee of Clinic … without Clinic's prior written consent, which shall not be unreasonably withheld." (ECF No. 1-2 at 8.) Thompson alleges that Ascension breached the Employment Agreement "by failing to release her from the contract's section 1.3 prohibition barring her from any medical practice activity during the remaining term of her contract." (ECF No. 1, ¶ 131.)

Ascension argues that Thompson's attorney "referenced" the restrictive covenant in the demand letter sent on May 23, 2024, but never requested in writing that Ascension release Thompson from any restriction. (ECF No. 14 at 12; *see also* ECF No. 1-2 (copy of demand letter).) Thompson responds that she gave verbal notice to Dr. Patricia Golden

on July 24 or 25, 2024, that she wished to be released from the contract's restrictive covenant. (ECF No. 17 at 15–16.)

Ascension relies on section 8.2 of the Employment Agreement, which states that "[a]ll notices, demands, and other communications that may or are required to be given under this Agreement must be in writing…." (ECF No. 1-2 at 14.) Because neither Thompson nor her lawyer ever in writing requested that Ascension release Thompson from the restriction on competition, Ascension argues it could not have failed to release Thompson under the contract.

But Ascension has not demonstrated that it is clear that a request to be released from the non-compete language is the type of communication that section 8.2 requires be in writing—i.e., that it is a "demand" "required to be given under" the Employment Agreement.

Thompson plausibly alleges that Ascension unreasonably withheld its consent regarding outside medical practice in violation of the Employment Agreement. Accordingly, the court will deny the defendants' motion to dismiss this claim.

### 4.5(d) Communication and Cooperation

Thompson alleges that Ascension breached the Employment Agreement "by breaching its duty of cooperation by refusing to communicate with Dr. Thompson or her attorney regarding outstanding issues created by the April 22, 2024 letter notice." (ECF No. 1, ¶ 132.) Thompson claims those issues included "removal or release of the

contract's section 1.3 restrictions prohibiting Dr. Thompson working as a physician anywhere without Ascension Wisconsin's prior consent and to provide a written release of that restriction." (*Id.*)

Ascension argues that Thompson has not pointed to any obligation it had to communicate with her attorney. (ECF No. 14 at 12–13.) Ascension contends that Thompson misstates the demand letter sent by her counsel because it did not contain a request to release her from the restrictive covenant. (*Id.*)

Thompson responds by pointing to section 4.2 of the Employment Agreement. (*See* ECF No. 17 at 16–17.) Section 4.2 states that "Clinic shall provide all necessary managerial, administrative and related services for the operation of the Physician's practice and all services as are necessary to allow the Physician to fulfill Physician's obligations under this Agreement." (ECF No. 1-2 at 11.) The court does not read section 4.2 to carry any plausible application to the issue of communicating about a release from the restrictive covenant in section 1.3.

Thompson contends that certain conduct standards were incorporated into the Employment Agreement and imposed an "obligation to provide liaison between her and Ascension," as well as for Ascension to communicate with her "openly and honestly." (ECF No. 17 at 17.) Specifically, she names the "Standards of Conduct," "Ascension Medical Staff Bylaws," and "Ascension's Standards of Conduct." (*Id.* (citing ECF No. 1-2 at 16).)

Thompson does not identify wherein or how these conduct standards create any such obligation. (*See id.*) The "Standards of Conduct" listed at the end of the Employment Agreement do not mention any requirement to provide a liaison or otherwise communicate with employees. (*See* ECF No. 1-2 at 16–19.) The attachments to the complaint do not include "Ascension Medical Staff Bylaws" or "Ascension's Standards of Conduct."

Thompson also argues that she "states a plausible claim for breach of contract for Ascension's breach of its 'duty of good faith and fair dealing' and 'duty to communicate' regarding 20 hours work and 'stonewalling' i.e. Ascension's refusal to talk or meet with her." (ECF No. 17 at 17.) However, Thompson has separately pled a claim for breach of the duty of good faith (*see* ECF No. 1, ¶¶ 134–39), which the court will address in turn.

There is no indication that any claim for breach of a duty of cooperation or communication exists independently from the implied contractual duty of good faith and fair dealing. *See Northgate Motors, Inc. v. Gen. Motors Corp.*, 111 F. Supp. 2d 1071, 1082 (E.D. Wis. 2000) ("A duty of good faith and fair dealing is an implied condition in every contract and imposes a duty of cooperation on the part of both parties and an obligation to act honestly.") (citing *In re Estate of Chayka*, 176 N.W.2d 561 (Wis. 1970)); *Betco Corp., Ltd. v. Peacock*, No. 14-CV-193-WMC, 2016 WL 7429460, at *6, 2016 U.S. Dist. LEXIS 177951, at *17 (W.D. Wis. Dec. 23, 2016) (describing the duty of good faith and fair dealing as

"essentially one of 'cooperation on the part of both parties,' and aris[ing] whenever the cooperation of one party is required for the performance of the other").

Insofar as her breach of contract claim stands, Thompson has failed to allege any independent claim arising from an obligation to communicate with her or her counsel. Accordingly, the court will grant the defendants' motion to dismiss with respect to Thompson's claim for breach of contract based on failure to communicate.

### 4.6. Breach of the Implied Duty of Good Faith and Fair Dealing

Thompson alleges that Columbia St. Mary's and Ascension violated the Employment Agreement's implied duty of good faith and fair dealing by failing (1) to employ her for a minimum of twenty hours per week on average since 2018, and/or (2) to remove her contract's prohibition and restrictive covenants on outside employment. (ECF No. 1, ¶¶ 134–39.)

The defendants argue that this claim must be dismissed because "[t]he implied covenant 'does not support an independent cause of action for failure to act in good faith under a contract.'" (ECF No. 18 at 8 (quoting *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 966 (7th Cir. 2000)).) But the defendants' position relies on application of the Uniform Commercial Code ("UCC"), which does not apply to employment contracts. *See Home Valu*, 213 F.3d at 966 (discussing commercial contracts and citing *Hauer v. Union State Bank of Wautoma*, 532 N.W.2d 456, 463–64 (Wis. Ct. App. 1995), which explicitly discusses application of the uniform law to a commercial contract).

Outside the UCC context, the Wisconsin Supreme Court has said that breach of the implied duty of good faith and fair dealing "is a separate intentional wrong, which results from a breach of duty imposed as a consequence of the relationship established by contract." *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 374 (Wis. 1978); *see also Foseid v. State Bank of Cross Plains*, 541 N.W.2d 203, 212–13 (Wis. Ct. App. 1995) (observing that "a party may be liable for breach of the implied contractual covenant of good faith even though all the terms of the written agreement may have been fulfilled"). "In other words, the duty of good faith accompanies not just what the contract says but also what the parties expected to occur." *Betco Corp., Ltd. v. Peacock*, 876 F.3d 306, 310 (7th Cir. 2017) (citing Wis. JI–Civil 3044 (2007); *Foseid*, 541 N.W.2d at 212); *see also Beidel v. Sideline Software, Inc.*, 842 N.W.2d 240, 256 (Wis. 2013) (recognizing "that a violation of the implied promise of good-faith dealing may be considered independent of any breach of the underlying contract").

Because Wisconsin law recognizes a claim for breach of the implied contractual duty of good faith as a standalone claim independent of the breach of contract claim, the court will deny the defendants' motion to dismiss this claim.

### 4.7. Promissory Estoppel

Thompson concedes that her claim for promissory estoppel should be dismissed. (ECF No. 17 at 19.) Therefore, the court will grant the defendants' motion to dismiss this claim.

**4.8. Reformation of Contract due to Mutual Mistake**

Thompson alleges that the Employment Agreement should be reformed because she and Columbia St. Mary's (and in turn Ascension) were "mistaken in their mutual belief … that section 1.3 'endeavor' and 'subject to clinic's operational needs' language did not apply to Thompson's employment …." (ECF No. 1, ¶¶ 146–51.) Specifically, Thompson alleges that Sue Sanicola assured her that this language did not apply to her. (*Id.*, ¶ 150.)

The defendants argue that Thompson has failed to plausibly state a claim for reforming the Employment Agreement because she "does not seek to establish that an oral agreement was omitted from her Employment Agreement due to mutual mistake." (ECF No. 14 at 16–19.)

Reformation of contract based on mutual mistake requires three elements: "(1) The parties reached an agreement; (2) the parties intended that such an agreement be included in the written expression of agreement; and (3) the oral agreement was not included in the written expression because of the mutual mistake of the parties." *Frantl Indus., Inc. v. Maier Const., Inc.*, 229 N.W.2d 610, 611 (Wis. 1975). "The burden is on the party seeking reformation to prove by clear and convincing evidence that 'through inadvertence, accident or mutual mistake the contract … does not set forth the intention of the parties.'" *Knowles v. Univ. of Wisconsin*, 647 N.W.2d 468 (Wis. Ct. App. 2002) (citation omitted).

Thompson has not alleged that the parties intended to set forth a different understanding in the Employment Agreement. (*See* ECF No. 1, ¶¶ 146–51.) Rather, she alleges that the parties *knew* the language in the Employment Agreement did not reflect their actual agreement but entered into the contract anyway. That does not describe inadvertence, accident, or mistake.

Even assuming the truth of Thompson's allegation that the parties agreed on terms that were different than those set forth in the Employment Agreement, Thompson has not alleged that the parties intended to make a different agreement. *See Tyler v. Schoenherr*, 820 N.W.2d 156 (Wis. Ct. App. 2012) ("The party seeking reformation must prove 'that both parties intended to make a different instrument and had agreed on facts that were different than those set forth on the instrument.'"). Because Thompson has alleged the parties knowingly entered into a contract that did not reflect their agreement, she has failed to state a claim for reformation based on mutual mistake.

The court will grant the defendants' motion to dismiss this claim.

### 4.9. Wis. Stat. § 103.43

Wis. Stat. § 103.43 provides that "[n]o person may influence, induce, persuade or attempt to influence, induce, persuade or engage a worker to change from one place of employment to another … through or by means of any false or deceptive representations, false advertising or false pretenses" related to the (1) kind and character of the work; (2) amount and character of the compensation; (3) sanitary or other conditions of

employment; or (4) failure to state that there is a strike or lockout when one actually exists at the proposed place of employment.

Thompson alleges that Ascension and Columbia St. Mary's violated § 103.43 "by falsely representing to Dr. Thompson to not give any meaning or effect to the 'endeavor' and 'subject to Clinic's operational needs' limiting language in the employment contract's section 1.3." (ECF No. 1, ¶ 152–59.) She alleges that this representation influenced, induced, persuaded, or engaged her to enter into the Employment Agreement "by means of false or deceptive representations or false pretenses concerning the amount, kind and character of her labor as to the minimum number of hours she would be scheduled to work.…" (*Id.*, ¶ 154.)

Ascension and Columbia St. Mary's argue that this claim should be dismissed because it is time-barred, the statute is inapplicable to Thompson, and Thompson has failed to identify a violation of one of the enumerated categories. (ECF No. 14 at 19–21.)

Thompson has not identified a false representation under the statute. Sanicola's alleged representation in 2010 about how the Employment Agreement would be applied did not prove to be false during the two-year term of employment that Thompson was induced to accept. (*See* ECF No. 1, ¶ 98 (alleging that Columbia St. Mary's first failed to schedule her for an average of twenty hours per week in 2013).) Thompson alleges that Sanicola's representation about the minimum hours she would be scheduled was renewed and incorporated into each two-year renewal of the Employment Agreement.

(ECF No. 1, ¶ 157.) But the statute targets representations that induce a person "to change from one place of employment to another," not to remain. *See* Wis. Stat. § 103.43. Therefore, Thompson cannot demonstrate that the defendants made a false representation about the term of employment she accepted. *See Luecke v. Gen. Elec. Co.*, No. 05-CV-403, 2006 WL 1589619, at *4 (E.D. Wis. June 6, 2006) (dismissing claim under § 103.43 where plaintiff could not show the employer's statement was false).

Even if Thompson could establish a false representation, her claim is barred by the statute of limitations. Because Wis. Stat. § 103.43 includes no limitations period, the three-year period applies. *See* Wis. Stat. § 893.93(1m)(a). Thompson responds that "the doctrine of continuing violation allowed her to delay suing [the] defendants until a series of their acts blossomed into a wrongful injury." (ECF No. 17 at 23.)

"The [continuing violation] doctrine applies in situations in which a claim is premised on the cumulative effect of individual, repeated acts, with the last event being timely." *Beal v. Wyndham Vacation Resorts, Inc.*, 956 F. Supp. 2d 962, 973 (W.D. Wis. 2013) (citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 115–16 (2002)). Thompson has demonstrated no adequate reason that her claim required cumulative effect to accrue. (*See* ECF No. 17 at 23 (claiming that the initial reductions in her average weekly hours were "not significant enough to be actionable").) Her claim became actionable, if at all, when Columbia St. Mary's failed to schedule her for at least twenty hours of work per week after allegedly representing that it would do so when it induced Thompson to

commence employment. Thompson alleges that reduced scheduling occurred well over three years ago. (See ECF No. 1, ¶ 158.) Therefore, her claim is barred by the statute of limitations.

Accordingly, the court will grant the defendants' motion to dismiss Thompson's claim under Wis. Stat. § 103.43.

### 4.10. Wis. Stat. § 103.465

Wis. Stat. § 103.465 provides that a restrictive covenant in an employment contract "is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal."

Thompson alleges that Ascension violated Wis. Stat. § 103.465 by barring her from working in her profession anywhere outside of Ascension clinics through September 30, 2026, and thereafter for eighteen months within fifteen miles of Ascension clinics. (ECF No. 1, ¶ 160–64.) These restrictions arise from two different sections of the Employment Agreement. First, section 1.3 prohibits Thompson from any outside medical practice "during" her employment (ECF No. 1-2 at 8), which purportedly is to end on September 30, 2026, by virtue of Ascension's non-renewal of the contract (*Id.* at 23). Second, section 7.1 prohibits Thompson for a period of eighteen months from the termination of the Employment Agreement from medical practice "within a fifteen (15) mile radius of Clinic." (*Id.* at 13.)

Ascension argues that this claim should be dismissed because Thompson has not alleged "any way in which these restrictions are *per se* unreasonable." (ECF No. 14 at 22.) While Thompson claims the restrictions have had an unreasonable impact on her, Ascension contends that the impact cannot plausibly give rise to a claim because Thompson has failed to request a modification of the restrictions in writing. (*Id.*) Ascension notes again that the demand letter from Thompson's counsel did not request a release from the restrictions, and Thompson herself has pleaded that she requested to be released only once during a phone conversation. (*Id.* at 22–23.) The Employment Agreement expressly states in section 8.2 that "[a]ll notices, demands, and other communications that may or are required to be given under this Agreement must be in writing…." (ECF No. 1-2 at 14.)

But Ascension does not point to any obligation to request modification under the statute. Even if the parties' contract contemplated the possibility of being released from one or more of the restrictions, the statute is concerned simply with the reasonableness of the restrictions. The complaint identifies several ways in which the restrictions in the Employment Agreement are unreasonable. (ECF No. 1, ¶ 163.) Ascension has not pointed to any authority suggesting that the possibility of release means a restriction is per se reasonable.

Thompson has stated a claim under Wis. Stat. § 103.465, and the court will deny the defendants' motion to dismiss in this respect.

### 4.11.    Wis. Stat. § 133.03(1)

Wis. Stat. § 133.03(1) provides, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is illegal." The Wisconsin Supreme Court has described the pleading standard as follows:

> A civil plaintiff filing an action under Wisconsin's antitrust act [§ 133.03(1)] must allege that (1) actionable conduct, such as the formation of a combination or conspiracy, occurred within this state, even if its effects are felt primarily outside Wisconsin; or (2) the conduct complained of "substantially affects" the people of Wisconsin and has impacts in this state, even if the illegal activity resulting in those impacts occurred predominantly or exclusively outside this state.

*Olstad v. Microsoft Corp.*, 700 N.W.2d 139, 158 (Wis. 2005).

Thompson alleges that Ascension violated Wis. Stat. § 133.03(1) by prohibiting her from working anywhere as an urgent care physician since April 2024. (ECF No. 1, ¶¶ 165–71.) She claims this restriction "has illegally restrained the trade or commerce for urgent care healthcare services available to the public." (*Id.*, ¶ 170.)

Ascension argues this claim should be dismissed because a plaintiff must allege the existence of an unlawful "conspiracy" to restrain trade. (ECF No. 14 at 24.)

Setting aside the question of conspiratorial conduct, Thompson has not satisfied the test set forth in *Olstad v. Microsoft Corp.* because she offers nothing more than a recitation of the statutory elements. (*See* ECF No. 1, ¶¶ 165–71.) A conclusory allegation that trade or commerce has been restrained does not "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (quotation marks and ellipses omitted).

Although the allegations in a complaint need not be detailed, a complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks, citation, and brackets omitted).

Thompson has not provided any factual allegations that plausibly suggest a broader restriction on trade occurred due to the non-compete restrictions in the Employment Agreement. Because she has failed to state a claim under § 133.03(1), the court will grant the defendants' motion to dismiss in this respect.

### 4.12. Tortious Interference with Contract

Thompson alleges that Momper tortiously interfered with the Employment Agreement. (ECF No. 1, ¶¶ 172–79.) She alleges that Momper had constructive knowledge of the contractual requirement to schedule Thompson for twenty hours per week on average but, willfully or wantonly, and in reckless disregard for her rights, scheduled Thompson for less than twenty hours per week on average from 2019 through September 30, 2026, and eventually "orchestrat[ed]" her termination. (*Id.*, ¶¶ 174–75, 177.) Thompson further alleges that Momper directed her "to punch-in later and punch-

out early when working at the Germantown urgent care clinic" and hired nurse practitioner Jessica Sullivan in 2019 and nurse practitioner Kaitlin Grigoryev in July 2023 "for the purpose of taking hours away" from Thompson. (*Id.*, ¶ 175.)

Thompson further alleges that Momper was motivated to interfere with the Employment Agreement because less compensation for Thompson meant more compensation (in the form of promotions and/or financial rewards) for Momper and because she wanted to replace Thompson with a younger clinician at the clinics she administrated. (ECF No. 1, ¶ 178.)

Momper argues that the claim should be dismissed because the statute of limitations has expired, the claim is not plausibly pled, and the claim is barred by the Wisconsin Fair Employment Act ("WFEA"). (ECF No. 14 at 24–26.) Thompson concedes that tortious interference based on age discrimination is barred by the WFEA but contends that her tortious interference claim based on financial motivation should survive. (ECF No. 17 at 29–30.)

> Under Wisconsin law, a claim for tortious interference with contract requires proof of five elements: "(1) the plaintiff had a contract or a prospective contractual relationship with a third party, (2) the defendant interfered with that relationship, (3) the interference by the defendant was intentional, (4) there was a causal connection between the interference and damages, and (5) the defendant was not justified or privileged to interfere."

*Wesbrook v. Ulrich*, 840 F.3d 388, 395 (7th Cir. 2016) (quoting *Briesemeister v. Lehner*, 720 N.W.2d 531, 542 (Wis. Ct. App. 2006)). The statute of limitations on a claim for tortious interference is three years. *See* Wis. Stat. § 893.57; *Mirbeau of Geneva Lake, LLC v. City of*

30

Case 2:25-cv-01964-WED    Filed 04/30/26    Page 30 of 36    Document 19

*Lake Geneva*, 746 F. Supp. 2d 1000, 1014 (E.D. Wis. 2010) (holding that § 893.57 applies to a claim for tortious interference with a contract).

Thompson contends that the continuing injury doctrine should extend the accrual of her claim from 2019 when Momper began reducing her hours to April 2024 when she was terminated. (ECF No. 17 at 28–29.) "The continuing violation doctrine, however, does not apply to 'a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing.'" *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010) (citations omitted).

Any cause of action which Thompson may have had against Momper accrued when Momper began scheduling her for less than twenty hours per week (assuming that decreased scheduling indeed violated the contract). *See Dellis v. Fay Servicing, LLC*, No. 18-C-202, 2018 WL 4927525, at *4, 2018 U.S. Dist. LEXIS 174582, at *9 (E.D. Wis. Oct. 10, 2018) (determining the continuing course of conduct did not delay accrual of a tortious interference claim based on refusal to accept payments because a cause of action accrues in Wisconsin when "there exists a claim capable of present enforcement").

Thompson does not allege that Momper had to do anything more than schedule her for less than twenty hours of work on one occasion to interfere with the Employment Agreement. (*See* ECF No. 1, ¶¶ 172–79.) Because reduced scheduling allegedly created a claim capable of enforcement, the interference did not require cumulative effect and cannot be saved by the continuing violation doctrine. *See Kovacs*, 614 F.3d at 676 ("[The

31

continuing violation doctrine] is thus a doctrine not about a continuing, but about a cumulative, violation.").

Thompson alternatively submits that each additional schedule of reduced hours constituted a new injury and extended the accrual of her tortious interference claim. (ECF No. 17 at 28–29.) But even if the court were to consider Momper's conduct from within the three-year statutory window, Thompson has not plausibly stated a claim.

"[A]n employee who alleges tortious interference by a co-worker or supervisor must prove 'both that the employer did not benefit from the defendant's act and that the act was independently tortious, for example as fraud or defamation.'" *Wesbrook v. Ulrich*, 840 F.3d 388, 399 (7th Cir. 2016) (quoting *Preston v. Wisconsin Health Fund*, 397 F.3d 539 (7th Cir. 2005)). Thompson does not suggest that Momper committed any independent tort against her. (ECF No. 1, ¶¶ 172–79.) She essentially alleges that Momper was acting in her capacity as an Ascension employee carrying out the contract but failing to fulfill Ascension's alleged scheduling obligation. (*See id.*) Therefore, the complaint does not plausibly suggest that Momper's conduct constituted "interference" with the Employment Agreement.

Because Thompson has failed to state a claim for tortious interference with a contract against Momper, the court will grant the defendants' motion to dismiss this claim.

### 4.13. Intentional Infliction of Emotional Distress

Thompson alleges that Ascension caused her extreme emotional distress by intentionally (1) failing to protect her from illegal or constructive termination based on her age and (2) preventing her from obtaining outside employment while continuing to employ her without providing any hours to work or severance compensation. (ECF No. 1, ¶¶ 180–84.)

To state a claim for intentional infliction of emotional distress under Wisconsin law, a plaintiff must allege: "(1) that the defendant's conduct was intentioned to cause emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct was a cause-in-fact of the plaintiff's emotional distress; and (4) that the plaintiff suffered an extreme disabling emotional response to the defendant's conduct." *Colborn v. Netflix Inc.*, 661 F. Supp. 3d 838, 865–66 (E.D. Wis. 2023) (quoting *Rabideau v. City of Racine*, 627 N.W.2d 795, 803 (Wis. 2001)).

Ascension argues that this claim should be dismissed because it is preempted by Wisconsin's Worker's Compensation Act ("WCA") and because Thompson has failed to plead sufficient facts to state a claim. (ECF No. 14 at 26–28.)

The WCA provides the exclusive remedy for injuries that satisfy the conditions for recovery under its chapter. Wis. Stat. § 102.03(2). Liability under the WCA requires that, "at the time of the injury, the employee is performing service growing out of and incidental to his or her employment." Wis. Stat. § 102.03(1)(c); *see also Poulin v. Indian*

*Cmty. Sch.*, No. 99–0583, 2000 WL 980620, at *2, 2000 Wisc. App. LEXIS 671, at *6–7 (Wis. Ct. App. July 18, 2000) (acknowledging that a question exists as to whether the WCA bars claims based on post-termination conduct in addition to pre-termination conduct); *but see Helland v. Kurtis A. Froedtert Mem'l Lutheran Hosp.*, 601 N.W.2d 318, 324 n.2 (Wis. Ct. App. 1999) (observing that a claim for intentional infliction of emotional distress based on termination should be dismissed under the "exclusive remedy" provision of the WCA).

Regardless of whether Thompson is deemed employed by Ascension until September 30, 2026, she has failed to allege the requisite intent required to state a claim. "To survive a motion to dismiss, [Thompson] must allege facts sufficient for the Court to infer that [Ascension's] 'course of conduct was undertaken for the purpose of imposing psychological harm upon [Thompson]." *Perry L v. Milwaukee Montessori Sch.*, No. 22-CV-1244-BHL, 2023 WL 6976708, at *6, 2023 U.S. Dist. LEXIS 189604, at *18 (E.D. Wis. Oct. 23, 2023) (quoting *Alsteen v. Gehl*, 124 N.W.2d 312, 317 (Wis. 1963)). Thompson alleges that Ascension acted intentionally in failing to protect her from termination and enforcing the restrictive covenants. (ECF No. 1, ¶¶ 180–84.) But she never alleges that Ascension intended to cause her emotional distress. (*See id.*, ¶¶ 183–84 (alleging that Ascension's conduct was a substantial cause of Thompson's emotional distress).) Therefore, Thompson has failed to state a claim for intentional infliction of emotional distress against Ascension. The court will grant the defendants' motion to dismiss this claim.

### 4.14.    Wis. Stat. § 109.09

Finally, Thompson states in her brief in opposition to the defendants' motion to dismiss that she impliedly stated a claim for back pay under Wis. Stat. § 109.09 via Exhibit 2 attached to her complaint. (ECF No. 17 at 31.) Exhibit 2 is a copy of the demand letter that Thompson's attorney sent to Ascension, which stated that "under Wis. Stat. § 109.09, [Thompson] is entitled to commence claims against [Ascension] for unpaid wages over the past two years - including statutory penalties, interest and legal fees." (ECF No. 1-2 at 3.)

Ascension correctly argues that Thompson cannot amend her complaint by way of a brief in opposition to a motion to dismiss. (ECF No. 18 at 15 (citing *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) ("[I]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")).)

Ascension further contends that amendment would be futile because Thompson is seeking contract damages, not unpaid wages. (ECF No. 18 at 15.) Under Wis. Stat. § 109.01, "wages" are defined as "remuneration payable to an employee for personal services, including salaries, commissions, holiday and vacation pay, overtime pay, severance pay or dismissal pay, … bonuses and any other similar advantages agreed upon between the employer and the employee or provided by the employer to the employees as an established policy." Thompson has not alleged that Ascension owes her remuneration for any services rendered. (*See generally* ECF No. 1.)

Because Thompson has not stated a claim for any "wages due" under Wis. Stat. § 109.03(5), the court will deny any implied request to amend the complaint to add a claim thereunder.

**5. Conclusion**

**IT IS THEREFORE ORDERED** that the defendants' motion to dismiss (ECF No. 13) is **granted in part and denied in part** as set forth herein.

The following claims are dismissed without prejudice: willful violation of the ADEA (claim #2), violation of § 510 under ERISA (claim #3), violation of the WFEA (claim #4), breach of contract based on failure to communicate (one part of claim #5), promissory estoppel (claim #7), reformation of contract due to mutual mistake (claim #8), violation of Wis. Stat. § 103.43 (claim #9), violation of Wis. Stat. § 133.03(1) (claim #11), tortious interference with contract (claim #12), and intentional infliction of emotional distress (claim #13). Any implied request to add an additional claim under Wis. Stat. § 109.09 is hereby denied. All other claims addressed herein may proceed at this time.

The Clerk of Court shall schedule a Rule 16 Scheduling Conference in this matter.

Dated at Milwaukee, Wisconsin this 30th day of April, 2026.

WILLIAM E. DUFFIN
U.S. Magistrate Judge